UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

NISSAN MOTOR ACCEPTANCE CORPORATION,

PLAINTIFF,

-AGAINST-

FIVE TOWNS NISSAN, LLC,
FIVE TOWNS AUTOMOTIVE, LLC,
SHMUEL WOLF, NEIL BARBAGALLO, AND
ALEX KORCHMAR,

DEFENDANTS.

CIVIL ACTION NO.:
2:14-cv- 5144

---

### VERIFIED COMPLAINT FOR WRIT OF REPLEVIN AND MONEY DAMAGES

Plaintiff, Nissan Motor Acceptance Corporation (hereinafter "NMAC"), by and through its counsel, Goldberg Segalla, LLP, as and for its Verified Complaint against Defendants, Five Towns Nissan, LLC, Five Towns Automotive, LLC, Shmuel Wolf, Neil Barabagallo, and Alex Korchmar (collectively hereinafter "Defendants"), hereby alleges as follows:

### PARTIES

1.  NMAC is a business corporation organized and existing under the laws of the State of California, maintains its principal executive office at One Nissan Way, Franklin, Tennessee 37067, and is qualified to transact business in the State of New York.

2.  Upon information and belief, Five Towns Nissan, LLC (hereinafter the "Nissan Dealership") is a limited liability company organized and existing under the laws of the State of New York with its principal offices located in Nassau County, New York.

3. Upon information and belief, Five Towns Automotive, LLC (hereinafter referred to as the "Chrysler Dealership") is a limited liability company organized and existing under the laws of the State of New York with its principal offices located in Nassau County, New York.

4. Upon information and belief, Shmuel Wolf resides at 35 Balfour Place, Brooklyn, NY 11225.

5. Upon information and belief, Neil Barbagallo resides at 20 Meadowood Drive, Unit 20, Jericho, New York 11753.

6. Upon information and belief, Alex Korchmar resides at 65 Oceana Drive East, Unit 2D, Brooklyn, NY 11235.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §1332(a)(1), insofar as this action is between citizens of different states, and the amount in controversy exceeds $75,000.

8. Venue is proper in this United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §1391(a)(2), insofar as this is the district in which a substantial part of the events giving rise to this Complaint occurred and in which a substantial part of the property that forms the subject matter of the action is situated.

## COUNT I – BREACH OF CONTRACT
## AGAINST THE NISSAN DEALERSHIP
## (WHOLESALE AGREEMENT)

9. NMAC incorporates the allegations of the preceding paragraphs of this Complaint as if fully stated herein.

10. The Nissan Dealership operates a new and used motor vehicle dealership located at 600 Burnside Avenue, Inwood, NY 11096.

11. On or about May 19, 2011, the Nissan Dealership entered into an Automotive Wholesale Financing and Security Agreement (hereinafter the "Nissan Dealership Wholesale Financing Agreement") with NMAC whereby NMAC agreed to provide secured wholesale inventory floor plan financing to the Nissan Dealership so that it could acquire new and used motor vehicles for sale and lease to consumers. We attach a true and correct copy of the Nissan Dealership Wholesale Financing Agreement at *Exhibit A*.

12. To secure its obligations under the Nissan Dealership Wholesale Financing Agreement, the Nissan Dealership granted NMAC a security interest in the Nissan Dealership's motor vehicles, parts inventory, furniture, fixtures, equipment, investment property, accounts, contract rights, intangible property, accounts receivable, and all of the proceeds of the same (hereinafter the "Nissan Dealership Collateral").

13. NMAC has properly perfected its security interest in the Nissan Dealership Collateral by the filing of a financing statement with the New York Secretary of State as required by New York law. We attach a true and correct copy of the UCC filing at *Exhibit B*.

14. Shmuel Wolf, Neil Barbagallo, and Alex Korchmar ("Guarantors") pursuant to continuing Guaranty Agreements, have guaranteed all obligations of the Nissan Dealership to NMAC. We attach true and current copies of the Guaranty Agreements at *Exhibit C*.

15. On or about April 4, 2013, the Nissan Dealership, Chrysler Dealership, Shmuel Wolf, and Neil Barbagallo entered into a Cross-Guaranty, Cross-Collateral and Cross-Default Agreement with NMAC whereby they "agreed to cross-guaranty, cross-default, and cross collateralize all" of their present and future obligations to NMAC under, among other agreements, the Nissan Dealership Wholesale Financing Agreement and their various personal guaranties. We attach a true and correct copy of the Cross-Guaranty, Cross-Collateral and Cross-Default Agreement at *Exhibit D*.

16. The Nissan Dealership has been and is in default of its material obligations to NMAC under the terms of the Nissan Dealership Wholesale Financing Agreement by, among other things, failing to timely pay sums due and owing for wholesale interest obligations, and failing to maintain minimum capitalization amounts required by NMAC under the Nissan Dealership Wholesale Financing Agreement.

17. NMAC has made repeated demands upon the Nissan Dealership to cure its various defaults owing to NMAC under the Nissan Dealership Wholesale Financing Agreement.

18. On or about February 18, 2014, NMAC, pursuant to the Nissan Dealership Wholesale Financing Agreement and as a result of the ongoing defaults by the Nissan Dealership, delivered notice to the Nissan Dealership stating, among other things, that: (a) NMAC was suspending credit under the Nissan Dealership Wholesale Financing Agreement and

that the Nissan Dealership Wholesale Financing Agreement would terminate effective May 30, 2014. We attach a true and correct copy of the correspondence at *Exhibit E*.

19. On or about June 2, 2014 and July 2, 2014, NMAC conditionally agreed to extend the termination date of the Nissan Dealership Wholesale Financing Agreement. NMAC's July 2, 2014 conditional extension notification required the Nissan Dealership to, among other things, make payments of $125,000 on July 15, 2014 and $125,000 on July 31, 2014 toward a defaulted capital loan (see Count III below). We attach a true and correct copy of the July 2, 2014 correspondence at *Exhibit F*.

20. The Nissan Dealership failed and refused to make the payments required by NMAC's July 2, 2014 conditional extension of wholesale financing termination date notification letter.

21. By letter dated August 5, 2014, NMAC made a demand for payment from the Nissan Dealership in the amount of $60,809.70 for vehicles that it sold but failed to repay NMAC. This created a sales out of trust or "SOT" condition, which is a serious breach of the Nissan Dealership Wholesale Financing Agreement because NMAC has lost its vehicle collateral and the Nissan Dealership has received the proceeds for the sales and used the money for other purposes – effectively reducing NMAC's collateral that secures its loans of money to the Nissan Dealership.

22. As a result of the Nissan Dealership's on-going defaults, NMAC is exercising its rights under Section 5.2 of the Nissan Dealership Wholesale Financing Agreement to accelerate the remainder of payments due for the financing of the vehicle inventory.

23. NMAC has demanded that the Nissan Dealership pay amounts due and owing and the Nissan Dealership has failed and refused to pay the amounts now due.

24. Defendants have failed to comply with NMAC's reasonable demands.

25. The Nissan Dealership has failed and/or refused to cure its payment default under the Nissan Dealership Wholesale Financing Agreement and remains obliged to pay NMAC, the following amounts as of August 25, 2014:

    a. Sold Vehicles: $1,176,911.60

    b. Open Inventory/New and Used Vehicles: $5,667,136.95

    c. Interest and Fees: $104,775.56

    d. Contractor Expenses ($500/day – 101 days [April 16 - August 26, 2014]) $55,000.00

    Total: $6,954,324.11

26. As a direct and proximate result of the Nissan Dealership's breach of the Nissan Dealership Wholesale Financing Agreement, NMAC has suffered financial injury, all to its general damage in the amount of $6,954,324.11, together with interest at the respective rates for each obligation under the Nissan Dealership Wholesale Financing Agreement accruing through the date of entry of judgment.

WHEREFORE, NMAC demands judgment against defendants for compensatory damages in the amount of $6,954,324.11, plus interest, expenses and the costs of suit and for such other and further relief as this Court deems just and proper.

## COUNT II – BREACH OF CONTRACT
## AGAINST THE CHRYSLER DEALERSHIP
## (WHOLESALE AGREEMENT)

27. NMAC incorporates the allegations of the preceding paragraphs of this Complaint as if fully stated herein.

28. The Chrysler Dealership operates a new and used motor vehicle dealership located at 550 Burnside Avenue, Inwood, NY 11096.

29. On or about May 19, 2011, the Chrysler Dealership entered into an Automotive Wholesale Financing and Security Agreement (hereinafter the "Chrysler Dealership Wholesale Financing Agreement") with NMAC whereby NMAC agreed to provide secured wholesale inventory floor plan financing to the Chrysler Dealership so that it may acquire new and used motor vehicles for sale and lease to consumers. A true and correct copy of the Chrysler Dealership Wholesale Financing Agreement is annexed hereto as *Exhibit G*.

30. To secure its obligations under the Chrysler Dealership Wholesale Financing Agreement, the Chrysler Dealership granted NMAC a security interest in the Chrysler Dealership's motor vehicles, parts inventory, furniture, fixtures, equipment, investment property, accounts, contract rights, intangible property, accounts receivable, and all of the proceeds of the same (the "Chrysler Dealership Collateral").

31. NMAC has properly perfected its security interest in the Chrysler Dealership Collateral by the filing of a financing statement with the New York Secretary of State as required by New York law. We attach a true and correct copy of UCC filing at *Exhibit H*.

32. The Guarantors and the Nissan Dealership have guaranteed all obligations of the Chrysler Dealership to NMAC. We attach true and current copies of the Guaranty Agreements at *Exhibit I.*

33. On or about April 4, 2013, the Nissan Dealership, Chrysler Dealership, Shmuel Wolf, and Neil Barbagallo entered into a Cross-Guaranty, Cross-Collateral and Cross-Default Agreement with NMAC whereby they "agreed to cross-guaranty, cross-default, and cross collateralize all" of their present and future obligations to NMAC under, among other agreements, the Chrysler Dealership Wholesale Financing Agreement and various personal guaranties. (*See* Ex. D).

34. The Chrysler Dealership has been and is in default of its material obligations to NMAC under the terms of the Chrysler Dealership Wholesale Financing Agreement by, among other things, failing to timely pay sums due and owing for wholesale interest obligations, and failing to maintain minimum capitalization amounts required by NMAC under the Chrysler Dealership Wholesale Financing Agreement.

35. NMAC has made repeated demands upon the Chrysler Dealership to cure its various defaults owing to NMAC under the Chrysler Dealership Wholesale Financing Agreement.

36. On or about June 2, 2014 and July 2, 2014, NMAC conditionally agreed to extend the termination date of the Chrysler Dealership Wholesale Financing Agreement. NMAC's July 2, 2014 conditional extension notification required the Chrysler Dealership to provide NMAC by July 31, 2014 with a copy of a written lending commitment from another lender agreeing to

refinance the Chrysler dealership's loans with NMAC by the conditionally extended September 3, 2014 financing termination date. (*See* Ex. E).

37. The Chrysler Dealership failed and refused to provide NMAC with a copy of the required lending commitment letter as requested.

38. By letter dated August 5, 2014, NMAC made a demand for payment from the Chrysler Dealership in the amount of $168,932.72 for vehicles that it sold but failed to repay NMAC. This created a sales out of trust or "SOT" condition, which is a serious breach of the Chrysler Dealership Wholesale Financing Agreement because NMAC has lost its vehicle collateral and the Chrysler Dealership has received the proceeds for the sales and used the money for other purposes – effectively reducing NMAC's collateral that secures its loans of money to the Chrysler Dealership.

39. As a result of the Chrysler Dealership's on-going defaults, NMAC is exercising its rights under Section 5.2 of the Chrysler Dealership Wholesale Financing Agreement to accelerate the remainder of payments due for the financing of the vehicle inventory.

40. NMAC has demanded that the Chrysler Dealership pay amounts due and owing and the Chrysler Dealership has failed and refused to pay the amounts now due.

41. Defendants have failed to comply with NMAC's reasonable demands.

42. The Chrysler Dealership has failed and/or refused to cure its payment default under the Chrysler Dealership Financing Agreement and remains obliged to pay NMAC the following amounts as of August 26, 2014:

    a.     Sold Vehicles:     $429,587.51

    b.     Open Inventory/New and Used Vehicles:     $2,173,230.00

    c.    Interest and Fees:     $157,706.99

    d.    Contractor Expenses ($500/day – 101 days [April 16 – August 26, 2014]) $55,000.00

Total: $2,766,024.50

43. As a direct and proximate result of the Chrysler Dealership's breach of the Chrysler Dealership Wholesale Financing Agreement, NMAC has suffered financial injury, all to its general damage in the amount of $2,766,024.50, together with interest at the respective rates for each obligation under the Chrysler Dealership Wholesale Financing Agreement and Lease accruing through the date of entry of judgment.

WHEREFORE, NMAC demands judgment against defendants for compensatory damages in the amount of $2,766,024.50, plus interest, expenses and the costs of suit and for such other and further relief to the Court as is deemed just and proper.

## COUNT III – BREACH OF CONTRACT AGAINST THE NISSAN DEALERSHIP (CAPITAL LOAN)

44. NMAC incorporates the allegations of the preceding paragraphs of this Complaint as if fully stated herein.

45. On or about August 12, 2013, the Nissan Dealership entered into a Capital Loan and Security Agreement (hereinafter the "Capital Loan Agreement") with NMAC. We attach a true and correct copy of the Capital Loan Agreement at *Exhibit J*.

46. Under the Capital Loan Agreement, NMAC lent the Nissan Dealership $1,129,937.23 to be repaid in monthly installments, with interest as set forth in the Capital Loan Agreement.

47. The Capital Loan Agreement provides that an "Event of Default" includes, among other things, the Nissan Dealership's (a) failure to "pay in full any installment of the Principal, or interest thereon, as and when the same becomes due and payable" and (2) breach of "any other covenant or agreement made by it . . . in any other agreement" with NMAC.

48. Under the Capital Loan Agreement, the Nissan Dealership granted NMAC a security interest in, among other things, the Nissan Dealership's motor vehicles, parts inventory, furniture, fixtures, equipment, investment property, accounts, contract rights, intangible property, accounts receivable, and all of the proceeds of the same.

49. The collateral identified in the Nissan Wholesale Financing Agreement and the Capital Loan Agreement is collectively referred to as the "Nissan Dealership Collateral."

50. As set forth in paragraph 13 above, NMAC has properly perfected its security interest in the Nissan Dealership Collateral by the filing of a financing statement with the New York Secretary of State as required by New York law.

51. In order to induce NMAC to enter into the Capital Loan Agreement, Shmuel Wolf and the Chrysler Dealership executed a Reaffirmation of Guarantors on August 12, 2013 by which they consented to the terms of the Capital Loan Agreement and "guaranteed all present and future indebtedness of [the Nissan Dealership] to NMAC pursuant to their respective guaranties . . ." which they reaffirmed. We attach a true and correct copy of the Reaffirmation of Guarantors at *Exhibit K*.

52. The Nissan Dealership failed and refused to pay monthly installments due in July and August 2014 under the terms of the Capital Loan Agreement, which are events of default under the Capital Loan.

53. The Nissan Dealership is also in breach of its obligations, as set forth above, under the Nissan Dealership Wholesale Financing Agreement.

54. By letter dated August 28, 2014, NMAC's counsel notified the Nissan Dealer that NMAC was declaring all principal, and interest accrued thereon, under the Capital Loan Agreement immediately due and payable in the total amount of $883,495.25 as of July 31, 2014, with the default interest rate to apply from that date going forward. We attach a copy of the written notice of default and acceleration at *Exhibit L*.

55. WHEREFORE, NMAC demands judgment against defendants for compensatory damages in the amount of $883,495.25, plus interest at the default rate from July 31, 2014, expenses and the costs of suit and for such other and further relief as this Court deems just and proper.

## COUNT IV
## REPLEVIN AND PRELIMINARY RELIEF – ALL DEFENDANTS

56. NMAC incorporates the allegations of the preceding paragraphs of this Complaint as if fully stated herein.

57. NMAC owns, possesses and retains a duly perfected purchase money security interest in and has the right to immediate possession of the Nissan Dealership Collateral and the Chrysler Dealership Collateral, including but not limited to motor vehicles, parts inventory, furniture, fixtures, equipment, tools, proceeds and general intangibles.

58. The Nissan Dealership and the Chrysler Dealership currently possess the Nissan Dealership Collateral and the Chrysler Dealership Collateral respectively and wrongfully refuse to deliver such collateral to NMAC.

59. Due to the intrinsic nature of motor vehicles, there is an immediate danger that unless restrained and/or ordered by this Court not to do so, the Nissan Dealership and the Chrysler Dealership may transfer, sell, pledge, assign, remove, secrete or otherwise dispose of the collateral in derogation to NMAC's security interests.

60. If the collateral is transferred, sold, pledged, assigned, removed, secreted or otherwise disposed of by the Nissan Dealership and/or the Chrysler Dealership, NMAC's rights to possession of the collateral will be unduly prejudiced, and NMAC will suffer irreparable injury to which NMAC has no adequate remedy at law.

WHEREFORE, NMAC demands an order and judgment against the Nissan Dealership and the Chrysler Dealership that:

(a) preliminarily and permanently enjoins and restrains each of them and their agents, servants, officers, guarantors and employees from doing or taking, or causing to be done or taking any action to transfer, sell, pledge, assign, remove, secrete or otherwise dispose of the Nissan Dealership Collateral and/or the Chrysler Dealership Collateral which is in dispute in the subject matter;

(b) determines that NMAC has possessory rights to the Nissan Dealership Collateral and the Chrysler Dealership Collateral superior to the Nissan Dealership, the Chrysler Dealership, and the other defendants; and

(c) directs the U.S. Marshall for the Eastern District of New York or the Sheriff of Nassau County, New York or other county where the Nissan Dealership Collateral and the Chrysler Dealership Collateral may be found to seize and return said collateral to NMAC (a writ of replevin/order of seizure) pursuant to Article 71 of the New York Civil Practice Law & Rules, made applicable by Rule 64 of the Federal Rules of Civil Procedure.

## COUNT V – BREACH OF CONTINUING GUARANTY AGREEMENTS

61. NMAC incorporates the allegations of the preceding paragraphs of this Complaint as if fully stated herein.

62. By virtue of their continuing Guaranty Agreements and the Cross-Guaranty, Cross-Collateral and Cross Default Agreement, defendants are, jointly and severally, indebted to NMAC for the entire indebtedness of the Nissan Dealership and the Chrysler Dealership owed to NMAC under the terms of the Nissan Dealership Wholesale Financing Agreement, the Chrysler Dealership Wholesale Financing Agreement, and the Capital Loan Agreement, plus interest at the rates specified in those documents until paid in full.

63. NMAC has made demands upon defendants to honor their continuing guarantees of the obligations owed to NMAC and pay the amounts due and owing from the Nissan Dealership and/or the Chrysler Dealership to NMAC.

64. Defendants have failed and/or refused to make payment of the Nissan Dealership's and the Chrysler Dealership's indebtedness to NMAC, and they remain liable to NMAC in the amount of $10,603,843.90.

65. As a direct and proximate result of defendants breach of their Continuing Guarantees, NMAC has suffered financial injury, all to its general damage in the amount of $10,603,843.90, together with interest at the respective rates for each obligation under the Nissan Dealership Wholesale Financing Agreement, the Chrysler Dealership Wholesale Financing Agreement and the Capital Loan Agreement through the date of entry of judgment.

WHEREFORE, NMAC demands judgment, jointly and severally, against defendants for compensatory damages in the amount of $10,603,843.90, plus interest, expenses and the costs of suit and for such other and further relief as this Court deems just and proper.

## COUNT VI – ATTORNEYS' FEES, COSTS AND EXPENSES

66. NMAC incorporates the allegations of the preceding paragraphs of this Complaint as if fully stated herein.

67. The Nissan Dealership Wholesale Financing Agreement and the Chrysler Dealership Wholesale Financing Agreement require payment to NMAC of the attorneys' costs and expenses incurred by NMAC in connection with the enforcement of its rights under those agreements.

68. The aforesaid continuing Guaranty Agreements and Cross-Guaranty, Cross-Collateral and Cross Default Agreement require payment by defendants and each of them, jointly and severally, of the attorneys' fees, costs and expenses incurred by NMAC in connection with the enforcement of its rights against defendants.

69. NMAC has and will incur attorneys' fees, costs and expenses in connection with the enforcements of its rights under the aforesaid Nissan Dealership Wholesale Financing Agreement, the Chrysler Dealership Wholesale Financing Agreement, the continuing Guaranty Agreements, and the Cross-Guaranty, Cross-Collateral and Cross Default Agreement for all of which sums, as determined and allowed by this Court, NMAC is entitled to judgment against defendants.

WHEREFORE, NMAC demands judgment against all defendants jointly and severally, for all attorneys' fees, costs and expense incurred by NMAC in connection with the enforcement of its rights herein in an amount to be determined by the Court and for such other and further relief as this Court deems just and proper.

DATED: August 29, 2014

*s/ Richard A. Braden*
Richard A. Braden (RB 0823)
Joseph A. Oliva (JAO 7672)
Kenneth R. Lange (KL 2862)
GOLDBERG SEGALLA, LLP
*Counsel for Defendant*
11 Martine Avenue, Suite 750
White Plains NY 10606-1934
Phone: (914) 798-5400
Fax: (914) 798-5401
E-Mail: rbraden@goldbergsegalla.com
joliva@goldbergsegalla.com
klange@goldbergsegalla.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

NISSAN MOTOR ACCEPTANCE CORPORATION,

PLAINTIFF,

-AGAINST-                                          CIVIL ACTION NO.:

FIVE TOWNS NISSAN, LLC,
FIVE TOWNS AUTOMOTIVE, LLC,
SHMUEL WOLF, NEIL BARBAGALLO, AND
ALEX KORCHMAR,

DEFENDANTS.

---

## VERIFICATION

I, *Randy Brooks*, being duly sworn and under oath, do hereby depose and say that I am a duly authorized representative of Plaintiff, Nissan Motor Acceptance Corporation, that I have read the allegations of the within Complaint, and that I attest to the truth of the averments therein.

                                               *s/ Randy Brooks*
                                             , Manager, Special Credit
                                        Nissan Motor Acceptance Corporation

Sworn to before me this
*29th* day of August, 2014

*s/ Catherine Knight*
Notary Public

---

My Commission Expires
*April 10, 2018*

2748168v2                                  17